USDC SCAN INDEX SHEET

















JAH    6/9/06    17:52

3:06-CV-01174   SKANE V. WELLS FARGO HOME

*1*

*CMP.*

1  THE WELCH LAW GROUP
   Eric M. Welch (SBN 206904)
2  625 Broadway, Suite 1400
   San Diego, CA 92101
3  Telephone (619) 702-4571
   Fax (619) 702-4574
4
   Attorneys for Plaintiff BRUCE SKANE,
5

FILED

06 JUN -2 PM 2: 55

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

6

7

8                         UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10  BRUCE SKANE, an individual,              Case No. '06CV 1174 IEG      WMc

11            Plaintiff.
                                             **COMPLAINT FOR DAMAGES FOR:**
12      vs.
                                             1. **Fraud;**
13  WELLS FARGO HOME MORTGAGE, an entity of   2. **Negligent Misrepresentation;**
    unknown form, and DOES 1 through 15, inclusive,  3. **Promissory Estoppel;**
14                                           4. **Breach of Fiduciary Duty;**
            Defendants.                      5. **Negligent Denial of Loan;**
15                                           6. **Violation of Title 18, U.S.C. Section**
                                                **1962(c) (RICO)**
16

17

18      For his Complaint, Plaintiff is informed, believes, and alleges as follows:

19                              **JURISDICTION**

20  1.      Pursuant to federal Rules of Civil Procedure 13(a), the court maintains diversity

21          jurisdiction over the parties to this action. The amount in controversy (over $303,436) is

22          sufficient to invoke jurisdiction.

23  **VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1962(c)**

24  2.      Jurisdiction is also proper in that Plaintiff is alleging that Defendant committed violations

25          of Title 18, United States Code, Section 1962. Therefore, this Court has original subject

26          matter jurisdiction of this Complaint.

27  /./.

28  /./.

                                    1
                              **COMPLAINT**

## VENUE

3.  Venue is proper because the injuries which give rise to this Complaint occurred in San Diego County, California, an area served by this Court.

## PARTIES

4.  Plaintiff BRUCE SKANE (hereinafter "SKANE"), an individual, is and at all times herein mentioned was, a resident of San Diego County, California.

5.  At all times herein mentioned, Defendant WELLS FARGO HOME MORTGAGE, INC. dba WELLS FARGO HOME MORTGAGE (hereinafter "WELLS FARGO") is and was a corporation duly organized and existing under and by virtue of the laws of the State of Nevada with its principal place of business in Las Vegas, Nevada.

## COMMON ALLEGATIONS

6.  Plaintiff is unaware of Defendants sued as DOES 1 through 15, inclusive. When Plaintiff becomes aware of the true names and/or capacities of DOES 1 through 15, inclusive, this Complaint will be amended to insert such information. Plaintiff alleges that DOES 1 through 15 inclusive, are somehow legally responsible for the acts complained of below and/or were the agents of the other Defendants.

7.  On or about January 20, 2004 WELLS FARGO agent, Pamela Goldblatt-Branigan (or an immediate subordinate) was contacted by PLAINTIFF SKANE regarding a construction and permanent loan inquiry that he had made to WELLS FARGO in connection with two projects in Pahrump, NV.

8.  PLAINTIFF SKANE made her aware of his business plan, which was to construct a complex of four units on Ambush Drive, in Pahrump, then, after financing was acquired from WELLS FARGO and the first project was underway, to begin a similar project in a nearby vicinity.

9.  On or about February 4, 2004, agent Liza Neilson ("Ms. Neilson") became PLAINTIFF SKANE's contact point for negotiations and acted as Defendant WELLS FARGO's authorized agent out of the Las Vegas, Nevada office.

2

**COMPLAINT**

10. On or about February 16, 2004 and in response to a detailed 16 page fax from PLAINTIFF SKANE containing a building contract and land purchase agreement, Ms. Neilson sent a document entitled "Good Faith Estimate of Settlement Costs" which lists a loan amount of $284,850, ARM 5/1 starting rate of 5.25 %, total payment of $2,074/month; expected rents for 4 units at $850.00 each (equaling $3400.00 – monthly payment for a positive cash flow of $1,326.00).

11. On or about March 14, 2004, Ms. Neilson caused to be delivered a commitment letter, dated March 12, 2004 with all applicable conditions, insurance requirements and a Truth in Lending Statement showing a loan amount of $228,375 at 5.25% with a 360 schedule consisting of 360 payments.

12. Under a justifiable belief that he had found his lending source, Plaintiff SKANE visited Ms. Neilson in the Las Vegas office and took extensive notes of her instructions.  Plaintiff followed these instructions and is aware that third parties to the construction project were contacted by Ms. Neilson and other of Defendant's agents in connection with the project.  Specifically, WELLS FARGO requested the opening of Title Escrow from Marilyn Miller at Land America Lawyer's Title and opened the Construction Closing with the title company.

13. On or about, June 4, 2004, Defendant's agent, Ms. Neilson, represented to Mr. Skane that the loan had effectively closed and even made a call the very same day, on June 4, 2004, to order the construction company, Red Rock Builders, to begin pouring the pad.

14. In reliance upon the lender's orders, Red Rock Builders did as Ms. Neilson instructed and began work on the foundation, incurring initial costs of more than $15,000 in grading and laying the foundation.  Plaintiff SKANE had no reason to suspect that WELLS FARGO would not follow through on their loan obligations, especially after the company notified both him and third parties that the loan had "effectively closed"

3

**COMPLAINT**

15. In further reliance upon the lender's orders, Plaintiff SKANE, finalized the purchase agreement for the second property on Arrowhead drive and caused the deed to be recorded in his name on or about June 29, 2004.

16. On or about July 16, 2004, WELLS FARGO then pulled its first "about face" in these transactions. Inexplicably, and based on absolutely no factual rationale, WELLS FARGO denied "permanent" loan #0135786895 based on the fact that Plaintiff SKANE was a builder! This absurd error was inexcusable given the fact that the parties were involved in very intricate and detailed negotiations on this project for more than six months and Defendant WELLS FARGO had clear knowledge that Plaintiff SKANE was not a builder. Defendant WELLS FARGO, nonetheless sent this bad faith notice of denial.

17. Plaintiff SKANE had been notified that new agents from WELLS FARGO would serve as his contacts and he subsequently learned that Ms. Nielson, Defendant's agent with whom he had worked throughout the course of these transactions, was no longer employed by the company.

18. Plaintiff Skane immediately called WELLS FARGO to clear up the error, but by now, both projects were in full motion and costs were beginning to mount. Having justifiably relied on the bank's representations that the construction loan had closed and aware that third party construction companies were also relying on WELLS FARGO representations, Plaintiff SKANE now faced escalating bills for construction, including the sewer lines, which were consequently delayed. In order to maintain his own integrity with workmen who were hired to complete his projects, he let everyone connected with the project know of the situation with WELLS FARGO, the denial of his loan, and the absurd reasoning behind such denial.

19. It was clear by the nature of this error that the situation would soon resolve itself, so Red Rock Builders incurred certain additional expenses in justifiable reliance of the resolution. They had, after all, been ordered to build by responsible WELLS FARGO agents.

4

**COMPLAINT**

20. After an unacceptably long delay, WELLS FARGO did, apparently, realize their own obvious error in denying PLAINTIFF SKANE's loan and caused to be delivered a new "Good Faith Estimate", but with a higher interest rate and higher monthly payments. This correspondence is dated July 26, 2004 and was signed by a new agent of WELLS FARGO, "Yasmeen".

21. The terms listed in this estimate were unfairly escalated from earlier representations and Plaintiff SKANE struggled to understand WELLS FARGO's reasoning, but an even more egregious outrage then occurred. On July 29, 2004, WELLS FARGO issued a letter to Plaintiff SKANE denying loan # 0139369367 (a different loan number than the one listed above) based upon an erroneous credit report!

22. After more than six months of business relations with their customer, after causing Plaintiff SKANE to incur damages by its representations that the loan had closed, after countless bad faith tactics by the bank in delaying, denying, then escalating the terms of the loan, it now sent yet another erroneous rejection.

23. Plaintiff SKANE had never made a late mortgage payment, as indicated by the correspondence subsequently obtained from his mortgage lender and delivered to WELLS FARGO. He instantly called his "new" WELLS FARGO representative, on July 30, 2004 to resolve the situation. No one returned the call. He followed up later in the week with more calls to this agent and other representatives. He escalated the situation to WELLS FARGO management and was told, by Manager Mike Kurch ("Mr. Kurch") that there were other loans that WELLS FARGO could offer to him upon "new terms".

24. Desperate, and left in an extremely vulnerable position by fraudulent representations made by authorized WELLS FARGO agents which had caused construction costs to accrue, Plaintiff SKANE was left with very limited options; namely to wait for the new terms and to call WELLS FARGO repeatedly. His inquiries were ignored.

5

**COMPLAINT**

25. Then, on or about August 20, 2004 and after likely being made aware of the outrageous treatment that Plaintiff SKANE had received from his company, Mr. Kurch attempted to sever the business relationship.

26. After eight months of "bait and switch" tactics, bad faith delays and denials, even after making business decisions on Plaintiff SKANE's behalf as agents of PLAINTIFF SKANE which caused him significant damages, WELLS FARGO simply sought now to wash its hands completely of the business relationship.

27. Now, Plaintiff SKANE was left with the responsibility of cleaning up the mess made by WELLS FARGO. Throughout the months of September and October, 2004 he was notified of liens placed upon the property by builders who had relied upon Ms. Nielson's representations, as an authorized agent of WELLS FARGO, that the loan had closed and that construction should proceed. He faced the sad reality that costs for water and sewer lines had significantly increased due to these same delays and double-speak. He saw all of his well designed business plans going up in smoke!

28. As described above, WELLS FARGO has committed torts of fraud and negligent misrepresentation, breach of contract, interference with contract, inducing breach of contract, breach of fiduciary duty, negligence in denying a loan, and breach of implied covenant of good faith and fair dealing as well as violating Federal Securities Laws, RICO and the Federal Tort Claims Act.

29. To date, Plaintiff SKANE has incurred more than $303,436 in damages and now suffers the impact of radically increased costs due to the illegal actions of WELLS FARGO during these transactions.

30. Plaintiff SKANE seeks the enumerated damages of $303,436 that he has incurred to date.

## FIRST CAUSE OF ACTION

## FRAUD

31. Plaintiff incorporates herein by this reference paragraphs 1 through 30 of this Complaint as if fully set forth again here.

6

**COMPLAINT**

32. Plaintiff continued to perform his obligations in reliance on terms of the loan agreement with Defendants based upon the representations of Defendant that Plaintiff's loan had effectively closed and that he should now prepare to proceed with building on the property.

33. Defendant, on at least one occasion, directly ordered Plaintiff's builders to begin construction without the consent of Plaintiff. Defendant assured Plaintiff's builders that the loan had effectively closed.

34. Plaintiff and his builders were not aware that Defendant had knowledge that the loan had not effectively closed at the time that Defendants made representations to the contrary. However, Defendant WELLS FARGO was aware of these facts before it made false statements upon which Plaintiff and his builders had relied.

35. Had Plaintiff been aware of the true facts that Defendant had not released the funds required to begin the construction project and that the loan had not effectively closed, Plaintiff and his builders would not have begun construction and extensive costs would not have been incurred. Defendants' intentional deception concerning these true facts caused Plaintiff to incur related expenses including, but not limited to travel, labor and material costs, time and efforts expended in supervising construction and managing the project and consequential damages.

36. Plaintiff had been damaged due to the fraud perpetrated by Defendant's duly authorized representatives and agents including Ms. Nielson, Mr. Kurch and other officers and employees of Defendant, in an amount to be determined at trial, but in no event less than $303,436.

37. Plaintiff is also entitled to recover damages from Defendant for all amounts paid to professionals and consultants retained by Plaintiff resulting from Defendants' fraud.

38. Defendant's acts were willful, wanton, or fraudulent, and therefore Plaintiff is entitled to punitive damages for such acts in an amount to be determined at trial.

7

## SECOND CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

39. Plaintiff incorporates herein by this reference paragraphs 1 through 30 of this Complaint as if fully set forth again here.

40. Plaintiff continued to perform his obligations in reliance on terms of the loan agreement with Defendant based upon the representations of Defendant that Plaintiff's loan had effectively closed.

41. Defendant, on at least one occasion, directly ordered Plaintiff's builders to begin construction without the consent of Plaintiff. Defendant assured Plaintiff's builders that the loan had effectively closed.

42. Plaintiff and his builders were not aware that Defendant had been negligent in making statements that the loan had not effectively closed at the time that Defendants made representations to the contrary. However, Defendant WELLS FARGO was aware of these facts before it made false statements upon which Plaintiff and his builders had relied.

43. Had Plaintiff been aware of the true facts that Defendant had not released the funds required to begin the construction project and that the loan had not effectively closed, Plaintiff and his builders would not have begun construction and extensive costs would not have been incurred. Defendants' negligent deception concerning these true facts caused Plaintiff to incur related expenses including, but not limited to travel, labor and material costs, time and efforts expended in supervising construction and managing the project.

44. Plaintiff has been damaged due to the negligence perpetrated by Defendant's duly authorized representatives and agents including Ms. Nielson, Mr. Kurch and other officers and employees of Defendant, in an amount to be determined at trial, but in no event less than $303,436.

**COMPLAINT**

## THIRD CAUSE OF ACTION

## PROMISSORY ESTOPPEL

45. The allegations of paragraphs 1 through 30 above are incorporated herein by reference as though fully set forth.

46. On or about June 4, 2004, during a telephone conversation with Plaintiff SKANE, while he was in San Diego County, California, Defendant WELLS FARGO agent, Ms. Neilson, represented to Mr. Skane that his loan had effectively closed and even made a call the very same day to order Plaintiff's construction company, Red Rock Builders, to begin pouring the foundation.

47. In so doing, Defendant knew or should have known that Plaintiff would be reasonably induced to rely on Defendant's promise, assurance and/or representation in exercising forbearance in his efforts to secure funding from an alternate lending source.

48. Plaintiff reasonably relied on Defendant's promise, assurance and/or representation and was induced to cease any search for an alternate lending source and further was induced to allow Defendant WELLS FARGO, through its authorized agent, to effect major business decisions on Plaintiff's behalf. These decisions included the above-described order to the builders to begin work on Plaintiff's property.

49. Defendant WELLS FARGO has not performed any part of its promise.

50. As a result of Defendant's failure to perform according to the promise, assurance and/or representation that it made to Plaintiff, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $303,436.

51. Injustice can only be avoided through payment of the monetary damages requested.

## FOURTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

52. The allegations of paragraphs 1 through 30 above are incorporated herein by reference as though fully set forth.

53. Defendant through its managing agent, Ms. Neilson, exercised business decisions in a fiduciary capacity as a de-facto business partner with Plaintiff SKANE and at all times

9

COMPLAINT

1   herein mentioned after June 4, 2004, owed Plaintiff SKANE the utmost duty of loyalty

2   as a fiduciary.

3   54.   Defendant violated its fiduciary duties to the Plaintiff in that it failed to deliver upon

4   express promises made to Plaintiff SKANE and innocent third parties that his loan had

5   effectively closed and that loan proceeds from Defendant WELLS FARGO would be

6   made available to pay for completion of constructions projects that were due by a set

7   deadline.

8   55.   As a direct and proximate result of Defendant's violation of its fiduciary duty as set

9   forth herein, Plaintiff has been damaged in an amount to be determined at trial, but in no

10   event less than $303,436.

11   ## FIFTH CAUSE OF ACTION

12   ## NEGLIGENT DENIAL OF LOAN

13   56.   The allegations of paragraphs 1 through 30 above are incorporated herein by reference

14   as though fully set forth.

15   57.   At all times mentioned in this complaint, Ms. Neilson was the agent and employee of

16   Defendant WELLS FARGO and was acting within the purpose and scope of this

17   agency and employment in performing the acts alleged in this complaint and with the

18   consent, permission, and knowledge of Defendant WELLS FARGO.

19   58.   Defendant, as a lending institution, owed a duty of care to Plaintiff, its customer, in

20   transacting its business operations in relation to those certain loans described herein.

21   59.   Defendant, through its authorized agent(s), so negligently and carelessly managed and

22   maintained its business negotiations and communications with Plaintiff and third

23   parties with whom it had contact and who would be reasonably expected to rely upon

24   representations on Plaintiff's behalf, that it breached its duty to Plaintiff.

25   60.   Defendant, through its authorized agent(s), acted with similar negligence in denying

26   the loans that Plaintiff had applied for and for which he had already been granted

27   effective approval.

28

10

**COMPLAINT**

61.  As a proximate result of this negligence carelessness, recklessness, and/or unlawfulness of Defendant, Plaintiff was injured in his business activities, and has sustained continuing financial damages all of which injuries have caused and continue to cause Plaintiff great mental, and emotional pain and suffering. These injuries will result in permanent loss of income to his general damage.

62.  As a proximate result of the negligence of Defendant, and its agents, Plaintiff will incur further incidental expenses as a result of these damages, the exact amount of which is unknown at the present time.

63.  Immediately prior to and at the time of the incident Plaintiff's relations with builders, city agencies, and other business partners was in good condition. As a proximate result of the negligence and carelessness of the Defendant, Plaintiff's reputation and business standing was damaged; and Plaintiff thereafter was denied benefits to which he would otherwise be entitled, all in amounts which will be shown according to proof, but in no event less than $303,436.

## SIXTH CAUSE OF ACTION

## VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1962(c)

64.  The allegations of paragraphs 1 through 30 above are incorporated herein by reference as though fully set forth.

65.  Plaintiff is informed and believes, and thereupon alleges, that from at least the year 2000 and continuing up to and including the date of the filing of this complaint, Defendant and others known and unknown, being persons or entities employed by and associated with Defendant, did unlawfully, knowingly, and intentionally conduct and participate, directly and indirectly, in the conduct, management, and operation of a scheme or enterprise to take control of various businesses, including that certain building project managed by Plaintiff and described herein.

66.  Defendant, and all of its agents and others were engaged in interstate commerce, and in activities which affected interstate commerce, while engaging in a pattern of racketeering activity consisting of numerous acts of asserting illegal and undue

11

**COMPLAINT**

1    influence and control over various enterprises, including that building project

2    specifically undertaken by Plaintiff and made subject to this Complaint.

3    67.   The scheme functioned as a continuing unit for more than five years to achieve shared

4          goals through unlawful means including the following: 1) to enhance its own profits

5          by causing misrepresentations of the existence of financing to be made to

6          entrepreneurs, builders and other contracted professionals who would justifiably rely

7          upon such representations to their detriment and; 2) to deceive customers into starting

8          and continuing with construction on projects while concealing and suppressing the

9          truth as to the status of loan applications.

10   68.   The formation, existence and actions of the scheme or enterprise were essential to the

11         success of the campaign of deceit, concealment and misinformation in identically or

12         similar patterns as occurred with Plaintiff as alleged in this Complaint.

13   69.   Defendant, in perpetrating the scheme or enterprise, has pursued a course of conduct

14         of deceit and misrepresentation and conspiracy to defraud the public, to misstate

15         and/or to withhold from the public material facts upon which it must justifiably rely in

16         the course of legitimate business activities.

17   70.   The fraudulent, misleading and unlawful scheme has continued from its inception to

18         the present and threatens to continue into the future.

19   71.   Plaintiff BRUCE SKANE demands a jury trial with respect to each issue inherent

20         within the claims contained in this Complaint, so triable.

21   /././.

22   /././.

23   /././.

24   /././.

25   /././.

26   /././.

27   /././.

28   /././.

**COMPLAINT**

1    **WHEREFORE, Plaintiff prays for judgment on all Causes of Action as follows:**

2        1.      For damages according to proof;

3        2.      For punitive and exemplary damages;

4        3.      For attorneys fees and costs of suit; and,

5        4.      For any and all further relief that this Court may deem proper.

6

7

8    Dated  6-2-06

                                        Eric M. Welch, Esq.

9                                            Attorney for Plaintiff
                                        BRUCE SKANE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

JS-44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

BRUCE SKANE, an individual

**DEFENDANTS**

WELLS FARGO HOME MORTGAGE, ~~entity form~~

FILED
06 JUN -2 PM 3:11

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
NV

DEPUTY

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**   SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** CLARK
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Eric M. Welch, Esq.
625 Broadway, Suite 1400
San Diego, CA 92101

**ATTORNEYS (IF KNOWN)**

'06CV 1174 IEG   WMc

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

* 1 U.S. Government Plaintiff
* 2 U.S. Government Defendant
* 3 Federal Question (U.S. Government Not a Party)
* X 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
(For Diversity Cases Only)   FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | • 1 | Incorporated or Principal Place of Business in This State | • 4 | • 4 |
| Citizen of Another State | • 2 | • 2 | Incorporated and Principal Place of Business in Another State | • 5 | X 5 |
| Citizen or Subject of a Foreign Country | • 3 | • 3 | Foreign Nation | • 6 | • 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

Diversity Jurisdiction Exists Per 28 U.S.C. Section 1332; A Federal Question Exists Under Title 18, U.S.C. Section 1962(c) (Lender Liability Case)

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| • 110 Insurance | 310 Airplane | • 362 Personal Injury- Medical Malpractice | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reappointment |
| • 120 Marine | 315 Airplane Product Liability | | 620 Other Food & Drug | ~~423 Withdrawal 28 USC 157~~ | 410 Antitrust |
| • 130 Miller Act | 320 Assault, Libel & Slander | • 365 Personal Injury - Product Liability | 625 Drug Related Seizure of Property 21 USC 881 | PROPERTY RIGHTS | 430 Banks and Banking |
| • 140 Negotiable Instrument | 330 Federal Employers' Liability | | | 820 Copyrights | 450 Commerce/ICC Rates/etc. |
| • 150 Recovery of Overpayment & Enforcement of Judgment | | • 368 Asbestos Personal Injury Product Liability | 630 Liquor Laws | 830 Patent | 460 Deportation |
| • 151 Medicare Act | 340 Marine | | 640 RR & Truck | ~~840 Trademark~~ | 470 Racketeer Influenced and Corrupt Organizations |
| • 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability | PERSONAL PROPERTY | 650 Airline Regs | SOCIAL SECURITY | |
| | | PERSONAL PROPERTY | 660 Occupational Safety/Health | 861 HIA (1395ff) | 810 Selective Service |
| | | X 370 Other Fraud | ~~690 Other~~ | 862 Black Lung (923) | 850 Securities/Commodities Exchange |
| • 153 Recovery of Overpayment of Veterans Benefits | 350 Motor Vehicle | • 371 Truth in Lending | LABOR | 863 DIWC/DIWW (405(g)) | |
| | 355 Motor Vehicle Product Liability | • 380 Other Personal Property Damage | 710 Fair Labor Standards Act | 864 SSID Title XVI | 875 Customer Challenge 12 USC |
| • 160 Stockholders Suits | | | 720 Labor/Mgmt. Relations | ~~865 RSI (405(g))~~ | 891 Agricultural Acts |
| • 190 Other Contract | 360 Other Personal Injury | • 385 Property Damage Product Liability | 730 Labor/Mgmt. Reporting & Disclosure Act | FEDERAL TAX SUITS | 892 Economic Stabilization Act |
| ~~• 195 Contract Product Liability~~ | | | | 870 Taxes (U.S. Plaintiff or Defendant) | 893 Environmental Matters |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | 740 Railway Labor Act | | 894 Energy Allocation Act |
| • 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence Habeas Corpus | 790 Other Labor Litigation | 871 IRS - Third Party 26 USC 7609 | 895 Freedom of Information Act |
| • 220 Foreclosure | 442 Employment | | 791 Empl. Ret. Inc. | | 900 Appeal of Fee Determination Under Equal Access to Justice |
| • 230 Rent Lease & Ejectment | 443 Housing/Accommodations | 530 General | Security Act | | |
| • 240 Tort to Land | 444 Welfare | 535 Death Penalty | | | 950 Constitutionality of State |
| • 245 Tort Product Liability | 440 Other Civil Rights | 540 Mandamus & Other | | | 890 Other Statutory Actions |
| • 290 All Other Real Property | | 550 Civil Rights | | | |
| | | ~~555 Prisoner Conditions~~ | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

X 1 Original Proceeding   • 2 Removal from State Court   • 3 Remanded from Appelate Court   • 4 Reinstated or Reopened   • 5 Transferred from another district (specify)   • 6 Multidistrict Litigation   • 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**   • CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23   DEMAND $ 303,436   Check YES only if demanded in complaint:   JURY DEMAND: • YES • NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE   Docket Number

DATE   7/25/08   $350   6/2/06

SIGNATURE OF ATTORNEY OF RECORD

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)